KENNE  H J. MURPHY
CLERK

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JUL 27  IC 4; 39 '90

U. .
S.
WE:

- - -

| | | |
|---|---|---|
| Judge | | |
| Journal | | |
| Motion # | | |
| Issue Card | | |
| N/S | | |
| Docketed | | |

UNITED STATES OF AMERICA,　　　. CRIMINAL NO. CR-1-90-0 4 .
　　　　　　　　　　　　　　　　 .
　　　　　　　　Plaintiff,　　　　 . Cincinnati, Ohio
　　　　　　　　　　　　　　　　 . Thursday, July 19, 1990
　　　　-vs-　　　　　　　　　　 . 10:00 a.m. Hearing
　　　　　　　　　　　　　　　　 .
PETER EDWARD ROSE,　　　　　　　 . (Sentencing)
　　　　　　　　　　　　　　　　 .
　　　　　　　　Defendant.　　　　 .
............................. .

## TRANSCRIPT OF PROCEEDINGS
### BEFORE THE HONORABLE S. ARTHUR SPIEGEL
TRANSCRIPT ORDERED BY:  Mr. Thomas McDonough

APPEARANCES:

For the Plaintiff:　　　　 William E. Hunt, Esq.  (AUSA)
　　　　　　　　　　　　　 220 USPO-Courthouse Building
　　　　　　　　　　　　　 Cincinnati, Ohio   45202

For the Defendant:　　　　 Roger J. Makley, Esq.
　　　　　　　　　　　　　 600 IBM Building
　　　　　　　　　　　　　 33 West First Street
　　　　　　　　　　　　　 Dayton, Ohio   45402

　　　　　　　　　　　　　 Robert A. Pitcairn, Jr., Esq.
　　　　　　　　　　　　　 1400 Tri-State Building
　　　　　　　　　　　　　 432 Walnut Street
　　　　　　　　　　　　　 Cincinnati, Ohio   45202

Also Present:　　　　　　　 Reuven J. Katz, Esq.
　　　　　　　　　　　　　 U.S. District Court Staff
　　　　　　　　　　　　　 Members of the Press

Law Clerks:　　　　　　　　 Sara S. Rorer, Esq.
　　　　　　　　　　　　　 Adam P. Hall, Esq.

Courtroom Clerk:　　　　　 Elizabeth Schaeffer

Court Reporter:　　　　　　 Mary Ann Ranz

2

1          THURSDAY, JULY 19, 1990

2          P R O C E E D I N G S    (10:00 a.m.)

3          THE COURT:   Inasmuch as we have a long docket this

4     morning, Mr. Rose's case will be taken first; following which

5     there will be a brief recess and we'll then resume with the

6     balance of the docket.

7              Now, since the Court is now in session, no one is

8     going to be permitted to leave the courtroom until the recess.

9     Following the sentencing, Mr. Rose and his family and his

10    lawyers will leave the courtroom first, and after they've left,

11    then everyone will be free to leave.

12             I recognize that many of the reporters present here

13    this morning are dealing with deadlines, and in order to

14    accommodate you, copies of any comments that I may make and the

15    sentence I intend to -- I impose today in skeleton form will be

16    available to you in my chambers immediately following the

17    sentencing.   I just ask that you go about obtaining the copies

18    from my staff in an orderly fashion.

19             I would like to remind everyone that no recording

20    devices are supposed to be in the courtroom nor is there any

21    photography.   I have arranged for you to have your cellular

22    phones out in the hallway so you can use them following the

23    sentencing.

24             One final comment for the artists:   If any of you are

25    using water colors, please do not shake your brushes on our

3

1   rug.

2       (Laughter.)

3           THE COURT:  All right, folks.  Now, ladies and

4   gentlemen, this is a very serious event that is occurring this

5   morning.  I expect everybody to conduct themselves accordingly.

6           We're ready to proceed with the case of the United

7   States of America versus Peter Edward Rose, Criminal 1-90-44.

8   Would you step forward, Mr. Makley?

9           MR. MAKLEY:  Thank you, Your Honor.

10          THE COURT:  Mr. Rose, are you in pain because of your

11  leg?

12          THE DEFENDANT:  No, sir; I'm okay.

13          THE COURT:  Stand back there.  If you are, you're

14  welcome to sit down if you would rather not stand.

15  Mr. Makley and Mr. Pitcairn --

16          MR. MAKLEY:  Yes, Your Honor.

17          THE COURT:  -- have you gentlemen had an opportunity

18  to review the presentence investigation in these proceedings

19  with Mr. Rose?

20          MR. MAKLEY:  Yes, we have, Your Honor.

21          THE COURT:  And as a result of your discussion, do

22  you wish to challenge any of the facts in the presentence

23  report?

24          MR. MAKLEY:  No, Your Honor.

25          THE COURT:  You know of any reason why sentence

4

1   should not be imposed on the defendant at this time?

2           MR. MAKLEY:  I do not, Your Honor.

3           THE COURT:  Do you wish to make a statement on behalf

4   of the defendant or present any information in mitigation of

5   punishment?

6           MR. MAKLEY:  Your Honor, we, as you know, have

7   submitted a comprehensive sentencing memorandum setting forth

8   all of the information we wish the Court to know and to take

9   into consideration in imposing sentence in this case.  And

10  beyond what's in that report, I have nothing further to say.

11  Mr. Rose would like to address the Court.

12          THE COURT:  Fine.  Mr. Rose, have you had an

13  opportunity to review the presentence investigation with your

14  lawyers?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  And do you have any comments you would

17  like to make or do you wish to challenge any of the facts in

18  the report?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  You wish to make any statement on your

21  own behalf in mitigation of punishment?

22       (The defendant and his counsel conferred privately.)

23          THE COURT:  You may do so, sir.

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  You may do so now if you would like.

1          THE DEFENDANT: Your Honor, I would like to say that

2   I am very sorry. I am very shameful to be here today in front

3   of you.

4          I think I'm perceived as a very aggressive,

5   arrogant-type of individual, but I want people to know that I

6   do have emotion, I do have feelings, and I can be hurt like

7   everybody else, and I hope no one has to go through what I went

8   through the last year and a half. I lost my dignity. I lost

9   my self-respect. I lost a lot of dear fans and almost lost

10  some very dear friends.

11         I have to take this opportunity to thank my wife for

12  giving me so much moral support during this ordeal. It had to

13  be very tough on her when your five-year-old son would come

14  home from school and tell her that his daddy is a jailbird.

15         I really have no excuses because it's all my fault;

16  and all I can say is, I hope somewhere, somehow in the future

17  I'm going to try to make it up to everybody that I disappointed

18  and let down. Thank you very much.

19         THE COURT: Thank you, Mr. Rose. Do you know, Mr.

20  Rose, of any reason why sentence should not be imposed on you

21  at this time in these proceedings?

22         THE DEFENDANT: No, sir.

23         THE COURT: Mr. Hunt, do you know of any reason why

24  sentence should not be imposed at this time?

25         MR. HUNT: No, Your Honor.

6

1          THE COURT:  Does the United States wish to make a

2    statement on behalf of the Government, or do you wish to offer

3    anything in regard to this case?

4          MR. HUNT:  We have nothing to offer, Your Honor.  We

5    would ask the Court impose a sentence within the ranges

6    established by the sentencing guidelines and the presentence

7    report that's been quite completely done in this case.

8          THE COURT:  Thank you, Mr. Hunt.

9          In deciding what to do in this case, I have read

10    everything that's been furnished to the Court, including the

11    defendant's very complete sentencing memorandum and

12    attachments, the many letters I have received from the public,

13    which have been made available to Mr. Rose's lawyers as well as

14    to the United States Counsel and the Probation Department and,

15    of course, the presentence report prepared by the Probation

16    Department.

17          I have a number of comments before imposing sentence.

18          Foremost, you must recognize that there are two

19    people here today:  Pete Rose the living legend, the all-time

20    hit leader, and, the idol of millions; and, Pete Rose, the

21    individual, who appears today convicted of two counts of

22    cheating on his taxes.

23          Today we're not dealing with the legend.  History and

24    the tincture of time will decide his place among the all-time

25    greats of baseball.  With regard to Pete Rose, the

1   individual, he has broken the law, he's admitted his guilt, and

2   he stands ready to pay the penalty. Under our system of law

3   and sense of fairness, when he's completed his sentence, he

4   will have paid his debt to society and should be accepted by

5   society as rehabilitated. Only time will tell whether he is to

6   be restored to the position of honor for his accomplishments on

7   the ball fields of America.

8         Neither are we here today to consider whether Pete

9   Rose was treated fairly by the Baseball Commissioner, whether

10   the Dowd Report was an objective and balanced report of his

11   activities, whether Pete Rose gambled on baseball, or whether

12   he should have been banished from baseball.

13         We're here today to impose a sentence on a man whose

14   life has been an inspiration to millions of people because of

15   his exploits on the ball diamond and his determination to

16   succeed in his chosen profession. We hope that he understands

17   that the sentence we impose is fair and necessary under the

18   circumstances, and that he will make the most of the

19   opportunities presented to him while confined and under

20   supervision so that he can regain confidence in himself,

21   continue his rehabilitation, continue to help others and,

22   therefore, return to society with a clean slate having paid his

23   debt.

24         Mr. Rose has pled guilty to two counts in the

25   Information: one count relating to a false tax return filed

1    for the year 1985, and the other count relating to the false

2    tax return filed for the year 1987.  Because these two counts

3    cover two separate time periods, they are governed by two

4    different sentencing systems.  Under Count 1, the judge

5    determines the maximum length of sentence, but the Parole

6    Commission determines how long the defendant will actually have

7    to serve.  Under Count 2, the sentencing range is governed by

8    the guidelines established by the United States Sentencing

9    Commission, and the sentence imposed by the judge is the actual

10   time that the defendant will have to serve.

11          In determining the appropriate punishment for a

12   criminal offender, a judge must consider the need for respect

13   for the law, deterrence, the protection of society,

14   rehabilitation, retribution and fairness.

15          When considering these factors, the Court must look

16   to the nature of the defendant's offense and to the defendant's

17   personal characteristics.  The purpose of Congress in

18   prescribing the guideline system of sentencing was to achieve

19   honesty, uniformity, and proportionality in sentencing.  The

20   guidelines attempt to achieve these goals by requiring that

21   each convicted person's sentence must be determined by

22   coordinating the offense behavior categories with the offense

23   characteristic category.  Thus, the guidelines consider the

24   offense conduct, classified by criminal activity, and the

25   offender characteristics, which include among others the

9

1    offender's relation to the victim, his role in the offense,

2    obstruction of justice, the offender's acceptance of

3    responsibility for his conduct, and his criminal history.

4            Since Mr. Rose's activity under Count 1 is

5    considered relevant conduct in determining his offense

6    characteristics under Count 2, it would not be fair to impose a

7    double sentence in this case, or consecutive sentences on Count

8    1 and Count 2.  In other words, concurrent sentences are going

9    to be imposed on the two counts of the indictment so that Mr.

10   Rose will not be penalized twice for the same activity.

11           Therefore, the sentence imposed in this case

12   relating to confinement will be that mandated by the

13   guidelines.  However, it should be understood that this Court

14   would have imposed a sentence on Count 1 which would result in

15   the same length of confinement as required under the

16   guidelines, even if this were not a guideline case.

17           After carefully considering all of these factors, I

18   have concluded that Mr. Rose must serve some time in a prison

19   setting for his crime in order to maintain respect for the law

20   and as a deterrent to others who might consider cheating on

21   their taxes.  Although I do not think that society needs to be

22   protected from Mr. Rose, since he is on the road of

23   rehabilitating himself, our law requires that when one commits

24   a crime, he must be punished and the punishment must be fair.

25   Recognizing that Mr. Rose is a well-known figure, it might be a

10

1   temptation to make an example of him by imposing a heavy

2   sentence.  On the other hand, because he has suffered so much

3   in the past year, in his career and financially, there might be

4   a temptation to go light.  I have attempted to weigh all of

5   these considerations in determining Mr. Rose's sentence in an

6   effort to be fair to the defendant and to fulfill the Court's

7   duty to society.

8           Mr. Rose's sentence will include incarceration at a

9   Federal Correctional Institution and a halfway house,

10  supervised release and community service, and a fine to cover

11  the cost of prosecution, confinement, and supervision.  We are

12  also fashioning his sentence to recognize the fact that during

13  his career he has been unselfish, helping others, particularly

14  children, both on and off the ball diamond.  Hopefully Mr. Rose

15  will help the adult prisoners where he'll be confined.  The

16  sentence will also require Mr. Rose to return to his roots in

17  the inner city during his supervised release in order to help

18  children there make something of themselves and to encourage

19  them to work to succeed in their goals with the same

20  determination and dedication that he did in his own life.  We

21  particularly want him to show these children that in spite of

22  the mistakes he has made, he can learn and profit from them and

23  become a more humble and better person from the experience.

24  Mr. Rose's lawyers have pointed out in the sentencing

25  memorandum to the Court that his hard work led him to

11

1    "unprecedented heights," and I'm quoting, and "even his

2    mistakes can serve as an example that no one is immune from

3    personal problems nor above the law." We believe his enormous

4    desire to succeed can be harnessed to help children in the

5    inner city. The children with whom Mr. Rose will be working

6    need a role model with whom they can identify in order to make

7    the most of their chances in life. Pete Rose can provide the

8    necessary inspiration, if he is half the person I think he is.

9         Now, in 1984, Congress passed into law the

10   Comprehensive Crime Control Act. By doing so, the United

11   States Sentencing Commission was created and was mandated to

12   develop guidelines for federal judges to use in sentencing.

13   These guidelines were created to further the basic purpose of

14   criminal punishment: deterring crime, protecting society from

15   the offender, providing just punishment, and rehabilitating the

16   offender. The three main objectives Congress wished to achieve

17   by creating a sentencing guideline system were: honesty,

18   uniformity and proportionality in sentencing. In simpler

19   terms, the guidelines would ensure that people with similar

20   backgrounds who commit similar crimes should receive similar

21   sentences.

22        In that connection, Title 18 of the United States

23   Code, Section 3553, requires this Court to consider specific

24   factors in imposing sentence. Those factors which this Court

25   thinks are appropriate for this case are as follows: To

12

1   reflect the seriousness of the offense; to promote respect for

2   the law; to provide just punishment for the offense; and to

3   afford adequate deterrence to criminal conduct.

4            So that all parties and the public have an

5   opportunity to understand how the Court sentences criminal

6   defendants, the law requires me to state in open court the

7   specific reasons why a particular sentence is being imposed.

8            Peter Edward Rose pled guilty to Counts 1 and 2 of

9   the Information, each charging Filing a False Federal Income

10  Tax Return in violation of Title 28 of the United States Code,

11  Section 7206(1).  The maximum penalty set forth by law for each

12  of these counts is up to three years of imprisonment, a

13  $250,000 fine, and a $50 special assessment.  The law also

14  provides in Count 2 for a period of up to one year of

15  supervised release, and it further provides that the Court can

16  order the cost of prosecution to be paid.

17           The appropriate guidelines for the offense of Filing

18  a False Federal Income Tax Return are found at Section 2T1.3 of

19  the United States Sentencing Guidelines Manual.  According to

20  that guideline, the base offense level is established depending

21  on the amount of tax loss caused by the offense since this

22  offense was committed in order to facilitate evasion of federal

23  income taxes.  It has been established that the overall tax

24  loss to the government was $162,703.15.  According to the

25  sentencing guidelines, when the tax loss exceeds $120,000 but

13

1  is less than $200,000, the base offense level is 13.  The

2  guideline then requires the Court to consider certain

3  adjustments to the level.  In this case, there is only one

4  adjustment applicable.  Since Mr. Rose has demonstrated an

5  affirmative acceptance of personal responsibility for his

6  involvement in this offense, the guideline at Section 3E --

7  excuse me -- 3E1.1 allows the Court to decrease the offense

8  level by two levels.  So, the total offense level in this case

9  is therefore 11.

10         In addition to the numeric offense level created by

11  the operation of the guidelines, the second and most important

12  factor is the criminal history category of the defendant.  Mr.

13  Rose has no known prior criminal convictions and, therefore,

14  according to the guidelines, he has a criminal history category

15  of Roman numeral I.

16         Based upon a total combined offense level of 11 and a

17  criminal history category of I, the guideline range for

18  imprisonment is from eight months to fourteen months.  There

19  are several sentencing options available to the Court in a case

20  of this nature.  The Court may impose the term of imprisonment

21  within the guideline range.  The Court may also impose a

22  sentence of imprisonment that includes a term of supervised

23  release with a condition that substitutes community confinement

24  or home detention for imprisonment, providing that at least one

25  half of the minimum term of the guideline range, which would be

14

1    four months in this case, is satisfied by imprisonment.   In

2    other words, using this option, the Court could require the

3    defendant to serve four months imprisonment followed by a term

4    of supervised release and includes four months residence in a

5    community treatment center, halfway house, or similar

6    residential facility or home detention.

7                A term of supervised release of up to one year may

8    be imposed by the Court on Count 2 only.

9                Now, probation is authorized by statute in this case

10   but not by the guidelines, because the minimum term of

11   imprisonment in the guideline range exceeds six months.

12               Now, there is a $50 special assessment which is

13   required by the statute on each of Counts 1 and 2 of the

14   Information.   There is a fine of up to $250,000 authorized on

15   each of Counts 1 and 2.   And since the guidelines control Count

16   2, the guideline range for a fine on that count is from $2000

17   to $250,000.   The Court also requires the defendant to pay the

18   cost to the government of any imprisonment, probation, or

19   supervised release ordered.   Also, pursuant to the statute, the

20   cost of prosecution can be ordered paid by the defendant.

21               Now, having set forth the elements of the sentence,

22   the Court inquires of the parties and of counsel whether there

23   are any objections or additions to the guideline findings by

24   the Court.  Mr. Makley?

25               MR. MAKLEY:  As to the guidelines as enunciated by

1    the Court, Your Honor, no.

2              THE COURT:  Thank you.  Mr. Pitcairn?

3              MR. PITCAIRN:  No, sir.

4              THE COURT:  All right.  We'll proceed to the

5    sentencing now, Mr. Rose.  Therefore, in United States of

6    America versus Peter Edward Rose, Criminal 1-90-44, the

7    defendant having pled guilty to both counts of the Information

8    and having been convicted thereby, this Court will sentence Mr.

9    Rose on the guideline count, which is Count 2, first.  The

10   sentence of the Court on Count 2 is that Peter Edward Rose be

11   committed to the custody of the Attorney General of the United

12   States, or his authorized representative, for imprisonment for

13   a period of five months to be followed by a term of supervised

14   release of one year with one of the conditions of supervised

15   release being that Mr. Rose be confined in a community

16   treatment center or halfway house for a period of three months

17   immediately following his release from imprisonment.  Other

18   conditions of supervised release are:  that the defendant abide

19   by the standard conditions of supervised release adopted by the

20   United States District Court for the Southern District of Ohio;

21   that the defendant be prohibited from possessing a firearm or

22   any other dangerous weapon during the term of supervised

23   release; that the defendant provide the Probation Officer

24   access to any requested financial information; that the

25   defendant continue to receive psychiatric treatment for his

1   admitted gambling addiction throughout the term of supervised

2   release or until released by his psychiatrist in conjunction

3   with the approval of his Probation Officer; and that the

4   defendant pay any local and state income taxes owed due to the

5   defendant's involvement in the matter before the Court today,

6   and Mr. Rose will furnish the Probation Department with written

7   documentation with regard to this matter; and that the

8   defendant perform 1000 hours of community service to be

9   monitored by his Probation Officer at the minimum rate of 20

10  hours per week during the one year supervised release term.

11  And during those terms -- excuse me -- during those months in

12  which school is in session, Mr. Rose is to perform community

13  service at the following Cincinnati Public Elementary Schools:

14  Hayes, Oyler, Heberle, Heinhold and Rothenberg.  During the

15  summer months when school is out, the defendant's community

16  service is to be performed at the LeBlond Boys Club located at

17  1621 Logan Street in Cincinnati.

18          Now, it is the further sentence of this Court that

19  the defendant is fined the sum of $50,000 on Count 2.  The

20  purpose of the fine is to cover the cost of confinement,

21  halfway house time, supervised release, and cost to Mr. Rose's

22  investigation and prosecution, and the defendant shall pay a

23  special assessment of $50 on Count 2.

24          Now, with regard to Count 1, it is the sentence of

25  this Court that the defendant be committed to the custody of

17

1    the Attorney General of the United States, or his authorized

2    representative, for imprisonment for a period of five months,

3    but such sentence to run concurrently to the sentence imposed

4    in Count 2.  Now, it is the further sentence of this Court that

5    the defendant be assessed the special assessment of $50 on

6    Count 1.

7            The sentence in Count 1, which is the non-guideline

8    case, has been run -- made to run concurrently with the

9    sentence in Count 2, the guideline case, because the

10   calculation of the guidelines took into account the behavior

11   which constituted Count 1 of the Information.

12           Therefore, the sentence in total is that Peter Edward

13   Rose will be confined to an institution of the Bureau of

14   Prisons for a period of five months.  It is the recommendation

15   of this Court that Mr. Rose be designated to serve his sentence

16   at the Ashland Kentucky Federal Correctional Institution Camp.

17   Following the five months of imprisonment, Mr. Rose will be

18   required to serve three months in a community treatment center

19   or halfway house here in Cincinnati as a condition of

20   supervised release.  Supervised release will last one year

21   under the conditions previously noted, and there is a fine of

22   $50,000 to be paid immediately, and a total assessment, special

23   assessment, of $100.  That completes the sentence.

24           Now, Mr. Rose, in accordance with 18 United States

25   Code, Section 3742, I hereby advise you that you have the right

18

1  to appeal your sentence, and if you're unable to pay the costs

2  of the appeal, you have the right to appeal to this Court for

3  leave to appeal in forma pauperis.

4          You're further advised that in accordance with the

5  provisions of Rule 4(b) of the Rules of Appellate Procedure,

6  you must file your notice of appeal with the Clerk of the

7  United States Court within ten days of the following of the

8  judgment which will be filed today, July 19th, 1990.

9  Therefore, you must file your notice of appeal on or before

10 July 29th, 1990.  The Court hereby advises you that if you so

11 request, the Clerk of this Court will prepare and file

12 forthwith a notice of appeal on your behalf.

13          Now, Mr. Rose, do you understand, first:  That you

14 have the right to appeal your sentence?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Second:  That you have right to apply to

17 this Court for leave to appeal in forma pauperis?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Third:  That you must file your notice of

20 appeal within ten days of the entry of judgment, or on or

21 before July 29th, 1990?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  And, finally, if you so request, the

24 Clerk of the Court will prepare and file forthwith a notice of

25 appeal on your behalf; do you understand that?

1        THE DEFENDANT:  Yes.

2        THE COURT:  All right.  Does the defendant need a

3 stay of execution?

4        MR. MAKLEY:  Yes, Your Honor.  As the Court is aware

5 from our communication with the Probation Department, Mr. Rose

6 has a medical problem with his knee that is going to require

7 surgery.  I do not know how long a rehabilitative period will

8 be required.  I don't expect that to be long-term, but until

9 the surgery has been performed and I have an opportunity to

10 confer with the surgeon performing it, I won't know what that

11 period will be, Your Honor.

12        THE COURT:  Well, I suggest we do this:  I suggest we

13 grant a stay of execution until August the 10th, and on August

14 the 10th, by 12:00 Noon on that day, if it's not continued

15 because of medical reasons, Mr. Rose is to report to the

16 institution designated by the Bureau of Prisons, which I trust

17 will be the Ashland Federal Correctional Institution Camp, on

18 that day.  It will be up to him to get himself there.  You can

19 determine through the U.S. Marshal Service or to the Bureau of

20 Prisons here or through his Probation Officer exactly where he

21 is supposed to report.

22        MR. MAKLEY:  Yes, Your Honor.

23        THE COURT:  Is Mr. Rose out on his own recognizance?

24        MR. HUNT:  Yes, Your Honor.  We have no objection to

25 continuing it.

20

1          THE COURT:  We'll continue Mr. Rose on his own

2   recognizance.  And if for medical reasons it's necessary for

3   him to continue therapy, that you advise the Court and we'll

4   consider extending the stay until such time he is released by a

5   doctor.

6          MR. MAKLEY:  Thank you, Your Honor.

7          THE COURT:  I think that completes it.  Anything

8   else, Mr. Hunt?

9          MR. HUNT:  No, Your Honor.

10          THE COURT:  Anything else, counsel?

11          MR. MAKLEY:  No, Your Honor.

12          MR. PITCAIRN:  No.

13          THE COURT:  All right.  Mr. Rose, you and your

14   counsel are free to leave and we'll hold up everybody as you

15   leave.

16          MR. PITCAIRN:  Thank you, Your Honor.

17                    - - -

18                PROCEEDINGS CONCLUDED

19                    - - -

20

21

22

23

24

25

21

1          C E R T I F I C A T E

2      I, Mary Ann Ranz, certify that the foregoing is a correct

3  transcript from the record of proceedings in the above-entitled

4  matter.

5

6  _____
   Mary Ann Ranz

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25